IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BAKER HUGHES OILFIELD OPERATIONS, INC.,<br><br>　　　Plaintiff,<br><br><br><br>vs.<br><br><br><br>REEDHYCALOG UK, LTD, and REEDHYCALOG, LP,<br><br>　　　Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS<br><br><br><br><br><br>Case No. 2:05-CV-931 TS |

　　　This matter comes before the Court on Defendants' Motion to Dismiss[1] and Defendants' three Motions to Strike.[2] For the reasons discussed below, the Motion to Dismiss will be granted and the three Motions to Strike will be denied as moot.

I.　　　Factual Background

　　　Plaintiff Baker Hughes ("Baker Hughes") manufactures rotary drill bits used for subterranean drilling in the gas and oil industry. These drill bits employ polycrystalline diamond compact ("PDC") cutters and inserts. Baker Hughes manufactures and sells drill bits that contain

---

[1]Docket No. 6.

[2]Docket Nos. 56, 58 and 60.

1

PDCs made by other companies. Defendants ReedHycalog UK, Ltd. and ReedHycalog, LP (collectively "ReedHycalog") manufacture PDCs that are used by ReedHycalog to manufacture drill bits that contain PDCs as components. Thus, Baker Hughes and ReedHycalog are direct competitors. ReedHycalog is the assignee of twelve patents related to PDCs ("the patents").

Beginning in October 2003, ReedHycalog sent several letters to Baker Hughes regarding several of the patents. No allegations of infringement were made in these letters. Rather, each was styled as a "Notice Letter" and included language notifying Baker Hughes of certain ReedHycalog patents and recounted claim language from those patents.

Both parties admit that "Reedhycalog was busy securing Baker Hughes bits from various sources, . . . in furtherance of a potential patent infringement action against Baker Hughes."[3] ReedHycalog's infringement evaluation is evidenced by several documents and emails that specifically examined Baker Hughes' drill bits.[4]

II.     Procedural History

Baker Hughes filed a declaratory judgment action against ReedHycalog on November 9, 2005. Baker Hughes' Complaint sought a declaration of noninfringement, invalidity, and unenforceability of the twelve ReedHycalog patents.

On January 12, 2006, ReedHycalog filed a Motion to Dismiss[5] based on lack of subject matter jurisdiction because it alleged there was no actual controversy where Baker Hughes failed to carry its burden of showing that ReedHycalog had an objective, reasonable apprehension of

---

[3] Baker Hughes' Mem. in Opp. ¶11 (Docket No. 54); s*ee also* ReedHycalog's Reply, at 7 (Docket No. 55).

[4] Baker Hughes' Mem. in Opp. ¶¶12-20.

[5] Docket No. 6.

suit. On May 12, 2007, this Court granted that motion and stated that, in the alternative, even if ReedHycalog had reasonable apprehension of suit, because the parties were engaged in settlement discussion, there was a reasonable prospect of non-judicial resolution of the dispute, and therefore, no actual controversy.[6]

Less than six hours after this Court dismissed this action, ReedHycalog sued Baker Hughes in Texas. The Texas action alleged infringement of four of the twelve patents that were the subject of the declaratory judgment suit that had been dismissed by this Court. Baker Hughes then moved to Alter or Amend the Judgment of Dismissal. Baker Hughes argued that the filing of the Texas action showed that ReedHycalog did have reasonable apprehension of suit. This Court ultimately denied Baker Hughes' motion based on the Federal Circuit's test of reasonable apprehension.[7]

Subsequently, the Supreme Court rejected the Federal Circuit's reasonable apprehension test in *MedImmune v. Genentech*.[8] The Federal Circuit then decided several cases following the *MedImmune* decision that are relevant to this matter.[9] The Federal Circuit vacated this Court's dismissal and remanded the present case for reconsideration in light of *MedImmune*.[10]

---

[6] Docket No. 13.

[7] Docket No. 24.

[8] 127 S. Ct. 764 (2007).

[9] *See Sony Elecs., Inc. v. Guardian Media Techs., LTD.*, 497 F.3d 1271 (Fed. Cir. 2007); *Teva Pharm., Inc. v. Novartis Pharm., Inc.*, 482 F.3d 1330 (Fed. Cir. 2007); *SanDisk Corp. v. STMicroelectronics*, 480 F.3d 1372 (Fed. Cir. 2007).

[10] Docket No. 35.

ReedHycalog has filed a new Memorandum in Support[11] of its Motion to Dismiss. ReedHycalog reasserts that this court lacked jurisdiction because there was no "actual controversy" at the time of filing. Baker Hughes argues that jurisdiction exists in this Court and, as the first-filed suit, this case should be allowed to proceed.

III.   Discussion

"The Declaratory Judgment Act provides that, '[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'"[12] The party claiming declaratory judgment jurisdiction must establish that "jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since."[13] An actual controversy requires

> the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.[14]

ReedHycalog argues that Baker Hughes has failed to carry its burden of proof demonstrating that an actual controversy arose between the parties at the time of filing this declaratory judgment action because ReedHycalog did not commit an affirmative act triggering an actual controversy and has never asserted any rights under the subject patents. Baker Hughes argues that an actual controversy did exist at the time of filing because ReedHycalog's patents

---

[11] Docket No. 51.

[12] *MedImmune*, 127 S.Ct. at 770 (citing 28 U.S.C. § 2201(a)).

[13] *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007).

[14] *Id*. (citing *MedImmune*, 127 S.Ct. at 771).

had already issued, Baker Hughes was making and selling the allegedly infringing products, ReedHycalog sent letters to Baker Hughes, and made representations regarding preparation for litigation undertaken long before the commencement of this suit.

### A. *Affirmative Act*

"In the context of conduct prior to the existence of a license, declaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee."[15] In *SanDisk*, the Federal Circuit found that the district court had jurisdiction when the patentee had not threatened an infringement suit but had performed and presented a 300-page, detailed infringement analysis to the declaratory judgment plaintiff, prior to the filing of suit.[16] Similarly, in *Sony*, the district court had jurisdiction where the patentee sent letters discussing infringement and potential licensing arrangements in light of the alleged infringement and the parties had "taken adverse positions" regarding infringement.[17] In *Teva Pharmaceuticals*, jurisdiction existed because the filing of an ANDA application requires paragraph IV certification that the subject drug does not infringe other patents or that the other patents are invalid.[18]

In contrast, in this case, none of the interactions between Baker Hughes and ReedHycalog indicated either an affirmative act or adverse legal positions at the time of filing this case. While

---

[15] *SanDisk*, 480 F.3d 1372, 1380-81 (Fed. Cir. 2007).

[16] *Id*. at 1382.

[17] *Sony*, 497 F.3d at 1285.

[18] *Teva Pharm*., 482 F.3d at 1340.

ReedHycalog had mailed several letters notifying Baker Hughes of issued and pending patents, these letters did not indicate that ReedHycalog had taken a position regarding infringement by Baker Hughes.  While ReedHycalog was, in fact, evaluating possible infringement by Baker Hughes, the dispute had not yet become "definite and concrete, touching the legal relations of parties having adverse legal interests."[19]  Baker Hughes cites several of ReedHycalog's internal communications in support of its position that ReedHycalog had taken a position regarding infringement.  The Court reads these communications to show that ReedHycalog was still evaluating infringement or, at most, gearing up for litigation.  In any case, ReedHycalog did not communicate to Baker Hughes anything that would indicate ReedHycalog had taken "a position that puts [Baker Hughes] in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do."[20]

    B.  *Assertions in the Texas suit*

Baker Hughes also makes much of the Texas suit and the assertions made in that suit regarding infringement.  However, jurisdiction must exist at the time of filing.[21]  Events that transpired after filing cannot operate to create jurisdiction at the time of filing.  Developments after the filing of this suit and before the filing of the Texas suit may well have given rise to jurisdiction, as can be surmised by the filing of the Texas suit itself, however, those events are not appropriately considered by this Court in its analysis of jurisdiction on November 9, 2005.

Thus, the Court finds that the standard for jurisdiction under *MedImmune* was not met at

---

[19] *Benitec*, 495 F.3d at 1344.

[20] *SanDisk*, 480 F.3d at 1381.

[21] *Benitec*, 495 F.3d at 1344.

the time of filing.  Therefore, ReedHycalog's motion to dismiss is granted.  As for the three motions to strike, the Court need not address those as they are now rendered moot.

    IV.    CONCLUSION

Based on the foregoing analysis, it is therefore

ORDERED that ReedHycalog's Motion to Dismiss (Docket No. 6) is GRANTED.  It is further

ORDERED that ReedHycalog's Motion to Strike Declaration of Dan Scott (Docket No. 56), Motion to Strike Declaration of Ross Moore (Docket No. 58) and Motion to Strike Declaration of Fayez Abdulrhman Al-Fayez (Docket No. 60) are DENIED AS MOOT.  The Clerk of the Court is directed to close this case forthwith.

DATED   February 5, 2008.

BY THE COURT:

_____
TED STEWART
United States District Judge